**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **VISION BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 10-0347-WS-B** |
| | ) | |
| **HORIZON HOLDINGS USA, LLC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion for Default Judgment (doc. 20), Motion to File Exhibits under Seal (doc. 26), and Supplemental Motion for Default Judgment (doc. 27). All three Motions are ripe for disposition.

**I.    Background.**

On July 8, 2010, plaintiff, Vision Bank ("Vision"), commenced this action by filing a Complaint (doc. 1) against defendants, Horizon Holdings USA, LLC ("Horizon"), James B. Sides ("Mr. Sides") and Jill E. Sides ("Ms. Sides"). The Complaint enumerated six state-law causes of action for breach of contract, based on the following allegations: (i) Horizon defaulted on its obligations to repay Vision on a note executed on or about December 21, 2008, in the principal amount of $182,023.13; (ii) Mr. Sides defaulted on a personal guaranty wherein he unconditionally guaranteed the debts and liabilities set forth in the December 2008 Note executed by Horizon; (iii) Mr. and Ms. Sides defaulted on a $150,000 home equity line of credit extended to them by Vision on or about January 23, 2007; (iv) Horizon defaulted on its obligations to repay Vision on a note executed on or about June 19, 2006, in the principal amount of $212,500.00; (v) Mr. Sides defaulted on a personal guaranty wherein he unconditionally guaranteed the debts and liabilities set forth in the June 2006 Note executed by

Horizon; and (vi) Mr. Sides defaulted on his obligation to repay Vision on a note executed on or about December 19, 2008, in the principal amount of $45,075.00.[1]

Following service of process, defendants Mr. and Ms. Sides appeared in this action by filing a Suggestion of Bankruptcy (doc. 9), reflecting that they had filed a Chapter 13 petition in the U.S. Bankruptcy Court for the Southern District of Alabama on August 18, 2010.  On January 13, 2011, Magistrate Judge Bivins (to whom this action was then assigned on this District Court's opt-out docket) entered an Order (doc. 10) staying this action as to the Sides defendants, but specifically authorizing Vision's claims against Horizon to proceed.  The stay has never been lifted as to the Sides defendants; therefore, the instant Motion for Default Judgment applies solely to Vision's claims against Horizon.

In April 2011, Vision filed a Motion for Entry of Default (doc. 17) asserting that it had served defendant Horizon by personal service on its registered agent (Mr. Sides) on July 29, 2010, but that Horizon had never appeared or defended in this action.[2]  On May 3, 2011, a Clerk's Entry of Default (doc. 19) was entered against Horizon pursuant to Rule 55(a), Fed.R.Civ.P., for failure to plead or otherwise defend.  Six weeks later, Vision followed up by filing its Motion for Default Judgment, which it supplemented via additional exhibits and argument on August 5, 2011.[3]

---

[1]     Federal subject-matter jurisdiction was properly predicated on the diversity provisions of 28 U.S.C. § 1332, inasmuch as the Complaint alleges that Vision is a citizen of Florida for diversity purposes, that defendants are all Alabama citizens, and that the amount in controversy exceeds $75,000.

[2]     Vision appended to its Motion a copy of the Proof of Service (doc. 17, Exh. 1) confirming that a private process server served Mr. Sides as Horizon's registered agent via personal service on July 29, 2010.  Service appears to have been properly effected.

[3]     The Certificates of Service appended to those supplemental filings (including a Supplemental Motion for Default Judgment and Motion for Leave to File Exhibits Under Seal) indicate that Vision served copies of same on Horizon by mailing them to Mr. Sides on August 5, 2011.  As such, Horizon has received ample notice of these ongoing default proceedings, but has elected to remain silent and not to defend its interests in this case.  Accordingly, the Court concludes that no further notice or invitation to Horizon is warranted prior to entry of default judgment.

II.     **Analysis.**

    A.     *Entry of Default Judgment is Appropriate.*

In this Circuit, "there is a strong policy of determining cases on their merits and we therefore view defaults with disfavor." *In re Worldwide Web Systems, Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003); *see also Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada*, 674 F.2d 1365, 1369 (11th Cir. 1982) ("Since this case involves a default judgment there must be strict compliance with the legal prerequisites establishing the court's power to render the judgment."). Nonetheless, it is well established that a "district court has the authority to enter default judgment for failure … to comply with its orders or rules of procedure." *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985).

Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than a year after being served, entry of default judgment is appropriate. Indeed, Rule 55 itself provides for entry of default and default judgment where a defendant "has failed to plead or otherwise defend." Rule 55(a), Fed.R.Civ.P. In a variety of contexts, courts have entered default judgments against defendants who have failed to appear and defend in a timely manner following proper service of process.[4] In short, "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party." *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp.2d 193, 195 (D.D.C. 2006) (citation omitted). That is precisely what Horizon has done here. Despite being served with process back in July 2010, Horizon has declined to appear or defend, and has thereby stopped the progress of this litigation dead in its tracks.

---

[4]     *See, e.g., In re Knight*, 833 F.2d 1515, 1516 (11th Cir. 1987) ("Where a party offers no good reason for the late filing of its answer, entry of default judgment against that party is appropriate."); *Matter of Dierschke*, 975 F.2d 181, 184 (5th Cir. 1992) ("when the court finds an intentional failure of responsive pleadings there need be no other finding" to justify default judgment); *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1290 (S.D. Ala. 2010) ("Where, as here, a defendant has failed to appear or otherwise acknowledge the pendency of a lawsuit for more than three months after being served, entry of default judgment is appropriate."); *Kidd v. Andrews*, 340 F. Supp.2d 333, 338 (W.D.N.Y. 2004) (entering default judgment against defendant who failed to answer or move against complaint for nearly three months); *Viveros v. Nationwide Janitorial Ass'n, Inc.*, 200 F.R.D. 681, 684 (N.D. Ga. 2000) (entering default judgment against counterclaim defendant who had failed to answer or otherwise respond within time provided by Rule 12(a)(2)).

The law is clear, however, that Horizon's failure to appear and the Clerk's Entry of Default do not automatically entitle Vision to a default judgment in the requested (or any) amount. Indeed, a default is not "an absolute confession by the defendant of his liability and of the plaintiff's right to recover," but is instead merely "an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability." *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F. Supp.2d 1353, 1357 (S.D. Ga. 2004); *see also Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1204 (5th Cir. 1975) (similar); *Descent v. Kolitsidas*, 396 F. Supp.2d 1315, 1316 (M.D. Fla. 2005) ("the defendants' default notwithstanding, the plaintiff is entitled to a default judgment only if the complaint states a claim for relief"). Stated differently, "a default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) ("A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.").

In light of these principles, the Court has reviewed the Complaint and is satisfied that Counts One and Four set forth viable causes of action against Horizon under Alabama law. In particular, Count One alleges that Horizon became indebted to Vision pursuant to a Multipurpose Note and Security Agreement executed on December 21, 2008, and that Horizon subsequently defaulted on its repayment obligations under that note. Similarly, Count Four alleges that Horizon became indebted to Vision pursuant to a Promissory Note executed on June 19, 2006, and that Horizon subsequently defaulted on its repayment obligations under that note. These and other factual allegations set forth in Counts One and Four of the Complaint are adequate to state viable causes of action under Alabama law for recovery on the notes.[5] Because the well-pleaded factual allegations in the Complaint are deemed admitted by virtue of Horizon's default, and

---

[5]     *See generally Barrett v. Radjabi-Mougadam*, 39 So.3d 95, 98 (Ala. 2009) (elements of breach of contract claim under Alabama law are valid contract, plaintiff's performance, defendant's nonperformance, and damages); *Christy v. Smith Mountain, Inc.*, 855 So.2d 1103, 1106 (Ala.Civ.App. 2003) (complaint stated claim for unpaid account by alleging that defendant owed plaintiff sum certain pursuant to agreement between parties for sale of materials).

because they are sufficient to state breach-of-contract claims under Alabama law, the Court finds that Horizon is liable to Vision under both Counts One and Four.

Simply put, entry of default judgment against defendant Horizon is appropriate pursuant to Rule 55, given its failure to appear after service of process and the sufficiency of the well-pleaded factual allegations of the Complaint (all of which Horizon has now admitted) to establish its liability to Vision on the breach of note theory set forth in the Complaint.

**B.    *Plaintiff's Damages.***

**1.    *Applicable Legal Standard.***

Notwithstanding the propriety of default judgment against Horizon, it remains incumbent on plaintiff to prove its damages.  "While well-pleaded facts in the complaint are deemed admitted, plaintiffs' allegations relating to the amount of damages are not admitted by virtue of default; rather, the court must determine both the amount and character of damages." *Virgin Records America, Inc. v. Lacey*, 510 F. Supp.2d 588, 593 n.5 (S.D. Ala. 2007); *see also Eastern Elec. Corp. of New Jersey v. Shoemaker Const. Co.*, 652 F. Supp.2d 599, 605 (E.D. Pa. 2009) ("A party's default does not suggest that the party has admitted the amount of damages that the moving party seeks.").  Even in the default judgment context, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award); *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming lower court's decision not to award damages on default judgment, where requested damages were "speculative and not proven by a fair preponderance of the evidence"); *Natures Way Marine, LLC v. North America Materials, Inc.*, 2008 WL 1776946, *1 (S.D. Ala. Apr. 16, 2008) (in default judgment setting, district court has obligation "not to award damages that are uncertain or speculative").[6]

---

[6]    In that regard, the Eleventh Circuit has explained that "[f]ederal law similarly requires a judicial determination of damages absent a factual basis in the record," even where the defendant is in default. *Anheuser Busch*, 317 F.3d at 1266.  Ordinarily, unless a plaintiff's claim against a defaulting defendant is for a sum certain, the law "requires the district court to hold an evidentiary hearing" to fix the amount of damages. *S.E.C. v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005).  However, no hearing is needed "when the district court already has a wealth of evidence from the party requesting the hearing, such that any additional evidence would be truly (Continued)

"Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp.2d 1287, 1294 (S.D. Ala. 2010).

### 2.    Unpaid Principal, Interest and Late Fees.

As noted, Count Four concerns Horizon's breach of the June 2006 Note, which corresponds to Vision's loan number 94552.  To prove its damages for this claim, Vision shows that on June 16, 2006, Horizon borrowed $212,500 from plaintiff, subject to a variable interest rate of 1.000% above Wall Street Prime, that Horizon further agreed to a late charge of 5% of any payment that was more than 10 days late, and that Horizon agreed that interest would accrue on all remaining principal until paid in full.  (Wagner Aff. I (doc. 20, Exh. 1), ¶¶ 3-4 & Exh. A.)  Vision further points to financial records confirming the payment history on the loan and showing a present unpaid principal balance of **$69,145.26** on Loan #94552.  (Wagner Aff. II (doc. 26, Exh. 1), at Exh. A.)[7]  From Vision's records, the undersigned calculates that plaintiff is

---

unnecessary to a fully informed determination of damages."  *Id.* at 1232 n.13; *see also Flynn v. Extreme Granite, Inc.*, 671 F. Supp.2d 157, 160 (D.D.C. 2009) (district court is not required to hold hearing to fix damages in default judgment context as long as it ensures there is a basis for damages specified); *Eastern Elec. Corp.*, 652 F. Supp.2d at 605 ("In considering the amount of damages ..., the Court may make its determination by conducting a hearing or by receiving detailed affidavits from the claimant."); *Virgin Records*, 510 F. Supp.2d at 593-94 ("Where the amount of damages sought is a sum certain, or where an adequate record has been made via affidavits and documentary evidence to show ... damages, no evidentiary hearing is required."); *Natures Way Marine, LLC v. North American Materials, Inc.*, 2008 WL 801702, *3 (S.D. Ala. Mar. 24, 2008) ("Although the trial court must make determinations as to the amount and character of damages, it is not necessary to conduct an evidentiary hearing to fix damages if the amounts sought by plaintiff are adequately supported by supporting affidavits and other documentation.").  In this case, Vision has not requested a damages hearing, but has instead submitted detailed evidence in support of its requested damages amount.  In light of these authorities and circumstances, the damages determination will stand or fall on Vision's written evidentiary submission, without the necessity of a formal hearing.

[7]    Frank W. Wagner, a Senior Vice President at Vision Bank, cites these same records for Loan #94552 and indicates that "[t]he current principal balance … is $118,045.26." (Wagner Aff. II, ¶ 3.)  The Court cannot discern any factual basis for that statement; indeed, the loan inquiry printout for Loan # 94552 found at Exhibit A to Wagner's Affidavit states "Current Balance:  69,145.26."  Without an explanation for how or why Wagner ascribes an additional $49,900.00 to the loan balance, above and beyond the loan balance specified in Vision's own (Continued)

entitled to interest payments on the unpaid principal totaling **$19,760.77**, through and including September 26, 2011.[8]  Vision has also properly shown that it is entitled to contractual late charges for Loan #94552 in the total amount of **$1,929.24.**  (Wagner Aff., ¶ 4 & Exh. B.)

With respect to the Multipurpose Note and Security Agreement that underlies the breach of contract claim set forth in Count One, plaintiff's evidence shows that, on December 19, 2008, Horizon executed a note promising to pay Vision the principal sum of $182,023.12 on Vision's loan number 300783.  (Wagner Aff. I, at ¶¶ 8-9 & Exh. D.)  In the December 2008 Note, Horizon agreed to pay interest at the fixed rate of 7.25% until the loan was repaid in full, as well as a default interest rate of 18.00% per annum on the balance of the Note if not paid at maturity, which was December 21, 2009 unless accelerated in the event of default.  (*Id.*, at Exh. D.)  The December 2008 Note further reflects that Horizon agreed to pay a late charge of 5% of any payment more than 10 days late.  Vision's financial records for Loan #300783 show that the current unpaid principal balance on Loan #300783 is **$181,923.12**.  (Wagner Aff. II, at ¶ 5 & Exh. C.)  Those records also indicate that Horizon defaulted on Loan #300783, as of December 29, 2008, thereby accelerating the maturity date of the Note and causing interest to accrue at the 18% default rate from that date forward.  (*Id.*, ¶ 6.)  Adding the $329.74 in accrued interest as of the date of default to accrued default interest from December 29, 2008 through September 26, 2011 in the amount of $89,805.23 yields a total interest balance on Loan #300783 of **$90,134.97**.  Plaintiff has further shown that it is entitled to late charges for Loan #300783 in the total amount of **$668.66**.  (Wagner Aff. II, at ¶ 6 & Exh. D.)

--------------------------------

records, the Court will not include Wagner's proposed figure in the default judgment award, but will instead use the principal balance recited in the underlying bank records.

[8]     Plaintiff provided calculations of both regular and default interest charges as Exhibit B to Wagner's second affidavit.  (*See* doc. 26, Exh. 1, at Exh. B.)  Those computations properly use the interest rate of 4.25%, which was the contractually-specified Wall Street Prime plus 1% for all relevant time periods.  The Court adopts those calculations, with the following two modifications:  (i) the default interest rate is computed through September 26, 2011, rather than August 5, 2011; and (ii) the balance on which interest is computed for the period of December 21, 2010 through the present is revised from $118,045.26 to $69,145.26 to match the principal balance reflected on Vision's own records for Loan #94552.

####    3.      *Attorney's Fees and Costs.*

In addition to the unpaid principal, interest, default interest, and late charges specified above, Vision also seeks an award of attorney's fees and costs.  "Alabama follows the American rule, whereby attorney fees may be recovered if they are provided for by statute or by contract …."  *Jones v. Regions Bank*, 25 So.3d 427, 441 (Ala. 2009) (citations omitted); *see also Battle v. City of Birmingham*, 656 So.2d 344, 347 (Ala. 1995) (same).[9]  The law is clear that "provisions regarding reasonable attorney's fees are terms of the contracts susceptible to breach."  *Army Aviation Center Federal Credit Union v. Poston*, 460 So.2d 139, 141 (Ala. 1984).

Both the June 2006 Note and the December 2008 Note specifically provide for Vision to recover its attorney's fees incurred in collecting the debt if Horizon were to default on its repayment obligations.  (*See* Wagner Aff. I, Exh. A, at 3 ("I agree to pay all costs of collection … if I am in default.  In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law)."); Wagner Aff. I, Exh. D, at 2 ("If I am an in default and you have to sue or take other steps to collect or secure this note, I agree to pay your reasonable costs. … I agree that these costs include a reasonable attorney's fee.").  By the plain terms of these agreements, then, Vision is entitled to recover from Horizon its reasonable fees and costs incurred in collection on and enforcement of the June 2006 Note and the December 2008 Note.  *See generally Willow Lake Residential Ass'n, Inc. v. Juliano*, --- So.3d ----, 2010 WL 3377701, *11 (Ala.Civ.App. Aug. 27, 2010) ("Alabama law reads into every agreement allowing for the recovery of attorney's fees a reasonableness limitation.").[10]

Plaintiff claims attorney's fees from two law firms (one retained for this litigation, the other to represent Vision's interests in the Sides bankruptcy proceedings) in the total amount of

---

[9]      The Court applies Alabama law to the attorney's fees and costs components of plaintiff's damages request because: (i) both Notes expressly provide that they are governed by the laws of the State of Alabama; and (ii) "a federal court sitting in diversity will apply the choice of law rules for the state in which it sits," *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1139 (11th Cir. 2005).

[10]      "An award of attorney fees, where permissible, is a matter within the discretion of the trial court and will not be reversed on appeal absent a showing that the trial court abused its discretion."  *Jones v. Sherrell*, 52 So.3d 527, 531 (Ala.Civ.App. 2010) (citations omitted).

$21,641.50, as well as costs and expenses totaling $1,676.97.  The undersigned has reviewed the invoices submitted by plaintiff in support of these categories of damages.[11]  That review gives rise to a substantial conceptual concern as to the claimed fees and costs.  Recall that Vision sued not just Horizon in this action, but also James Sides and Jill Sides individually.  The Sides defendants have not defaulted in this litigation, and plaintiff seeks no default judgment as to them.  Recall further that the claims against the Sides defendants include alleged breach of contracts other than (and sometimes unrelated to) the June 2006 Note (Loan #94552) and the December 2008 Note (Loan #300783) made to Horizon.  Indeed, four of the six counts in the Complaint concern breach by the Sides defendants, not by Horizon (the sole defendant against which default judgment is being entered), of agreements to which Horizon was not a party, such as a Home Equity Line of Credit Agreement (Account #80007627) executed by the Sides defendants and a Multipurpose Note and Security Agreement (Loan #51403) executed by James Sides.  Plaintiff has neither shown nor articulated any argument how fees and costs incurred in collecting on or enforcing agreements that the Sides defendants (in their individual capacities)

---

[11]     Plaintiff filed these exhibits under seal, in tandem with its Motion for Leave to File Exhibits to Supplemental Motion for Default Judgment Under Seal (doc. 26).  As grounds for sealing these law firm billing records, plaintiff states that "the invoices for legal services and expenses … contain information protected by the attorney-client privilege" and that they should "be filed under seal due to the confidential and privileged information contained in the attorneys' invoices."  (*Id.*, ¶¶ 2-3.)  The problem with this argument is that the invoices filed as exhibits have been heavily redacted to remove the very privileged information for which plaintiff seeks sealed status.  Both attorneys' affidavits accompanying those invoices confirm that they have been submitted "with attorney-client privileged information redacted."  (Hale Supp. Aff. (doc. 26-2), ¶ 8; Gaal Supp. Aff. (doc. 26-3), ¶ 7.)  If the privileged information that might have justified the filing of the invoices under seal has been redacted, then there is no discernable need for sealing those exhibits, particularly given the vital importance of the public's right of access to judicial proceedings.  *See, e.g., Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) ("The common-law right of access to judicial proceedings … is instrumental in securing the integrity of the process" and unquestionable "includes the right to inspect and copy public records and documents."); *Romero v. Drummond Co.*, 480 F.3d 1234, 1245-46 (11th Cir. 2007) (explaining that "[m]aterial filed in connection with any substantive pretrial motion … is subject to the common law right of access" and that such "common law right of access may be overcome by a showing of good cause").  Plaintiff not having made the requisite showing of good cause to support the filing under seal of redacted attorney invoices, the Motion for Leave to File Exhibits Under Seal (doc. 26) is **denied**, and the Clerk's Office is **directed** to unseal that docket entry.

breached can properly be imputed to Horizon pursuant to the fee-shifting provisions of the June 2006 and December 2008 Notes executed by Horizon.[12]

Review of the invoices confirms that Vision is requesting not only recovery of its attorney's fees and costs incurred in collecting on Horizon's debts, but also recovery of its attorney's fees and costs incurred in collecting on the Sides' debts. This fact is rendered unmistakably clear by the numerous invoice entries showing accrual of attorney's fees by Vision in connection with the Sides' bankruptcy proceedings. Plaintiff has not endeavored to disentangle the attorney's fees and costs it has incurred in collecting on the Horizon debts and those incurred in collecting on the Sides debts. Under the circumstances, it would be inappropriate to award Vision the entire documented cost of collection, given that many of those collection efforts have related equally to Horizon's notes and to separate loans and agreements to which Horizon was not a signatory and which have no apparent relationship to Horizon's breach of the promissory notes it executed. To account for this deficiency in plaintiff's proof, and in recognition that plaintiff's billing entries show expenditure of considerable time and effort to enforce (and maximize collections under) the Sides' agreements, the undersigned reduces plaintiff's requested attorney's fees and costs by a factor of 50%. Accordingly, plaintiff will be awarded reasonable attorney's fees of **$10,820.75** and reasonable costs and expenses of **$838.48**, representing reasonable attorney's fees and costs incurred by Vision in enforcing the notes breached by Horizon.

**III.    Conclusion.**

Plaintiff having demonstrated that all of the bold-type amounts specified above are elements of damages which it is entitled to recover against Horizon in this matter, the Court will enter a default judgment against Horizon in the grand total of those amounts, to-wit: **$375,221.25**.

---

[12]    The Complaint also includes two causes of action against James Sides for breach of personal guaranties that he executed to guarantee repayment of the June 2006 and December 2008 Notes executed by Horizon. Arguably (although plaintiff has not raised such an argument), Vision's attorney's fees incurred in suing Mr. Sides for breach of the guaranties may reasonably be characterized as costs of collection that are recoverable against Horizon under the terms of the June 2006 and December 2008 Notes, inasmuch as Vision's act of suing Mr. Sides under the guaranties is an indirect means of collecting on the Horizon notes that were the subject of said guaranties.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.     Plaintiff's Motion for Leave to File Exhibits to Supplemental Motion for Default Judgment Under Seal (doc. 26) is **denied**, and the Clerk's Office is **directed** to unseal that docket entry;

2.     Plaintiff's Motion for Default Judgment (doc. 20) and Supplemental Motion for Default Judgment (doc. 27) are **granted in part, and denied in part**;

3.     A default judgment will be entered in favor of plaintiff, Vision Bank, and against defendant Horizon Holdings USA, LLC, in the total amount of **$375,221.25**; and

4.     This action remains pending against defendants James B. Sides and Jill E. Sides.

DONE and ORDERED this 26th day of September, 2011.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE